# In the United States Court of Federal Claims

<table>
<tr><td>

PARRISH CONNALLY,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

</td><td>

No. 25-cv-1493

Filed: June 11, 2026

</td></tr>
</table>

## MEMORANDUM AND ORDER

Plaintiff Parrish Connally, proceeding *pro se*, seeks to challenge adverse actions taken by the Department of the Air Force (Air Force), for which he works as a civilian employee. Plaintiff alleges that the Air Force retaliated against him for filing whistleblower complaints, that the Air Force wrongly denied him leave for a long-term religious observance, and that the Air Force failed to pay him for a period when he was marked furloughed during a government shutdown. However, prior to filing the present suit, Plaintiff also challenged the same Air Force actions in a case filed in federal district court. Defendant moves to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) for want of jurisdiction and failure to state a claim. ECF No. 18. For the reasons set forth below, this Court holds that it lacks jurisdiction over Plaintiff's claims. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 18) and **DISMISSES** Plaintiff's Second Amended Complaint (ECF No. 17) (Second Amended Complaint). *See* Rules 12(b)(1), 12(h)(3).

**FACTUAL BACKGROUND**

I.    **Court of Federal Claims Action**

According to his Second Amended Complaint, Plaintiff is a civilian employee of the Air Force, where he serves "as Recreation Specialist, Youth Sports and Fitness Director, GS-0188-07," with the 628th Force Support Squadron at Joint Base Charleston, South Carolina.  Second Am. Compl. ¶ 6.  Plaintiff alleges that he engaged in protected whistleblower activities "[b]eginning on or about February 12, 2025."  *Id.* ¶ 8.  As asserted in Plaintiff's Second Amended Complaint, the allegedly protected activities include the following:

> a.  Filed complaints with the Installation Representative for Occupational Safety and Health Administration (OSHA) on February 18, 2025;
>
> b.  Submitted formal compliance inquiry to U.S. Fish and Wildlife Service on April 14, 2025, and provided written notice of that inquiry to installation command, [inspector general (IG)], and [equal employment opportunity (EEO)] offices on April 15, 2025[;]
>
> c.  Made disclosures to the installation Inspector General;
>
> d.  Filed formal complaints with the Equal Employment Opportunity (EEO) office, with counselor contact on April 23, 2025, formal complaint filed June 6, 2025, and subsequent amendments filed February 9, 2026;
>
> e.  Requested reasonable accommodation under the Rehabilitation Act;
>
> f.  Requested religious accommodation under Title VII on July 21, 2025.

*Id.* ¶ 8.

Plaintiff alleges that on July 17, 2025, he told his supervisors that for three months he intended "to observe Vassa, a sacred period in the Buddhist faith, and sincerely held belief from July 17, 2025 through October 17, 2025."  *Id.* ¶ 11.  Plaintiff alleges that on July 21, 2025, he "submitted a formal request for religious accommodation to observe Vassa."  *Id.* ¶ 12.  Plaintiff alleges that on August 11, 2025, Lieutenant Colonel John R. McCormick denied Plaintiff's request for religious accommodation.  *Id.* ¶ 13.  Plaintiff also alleges he was placed on "Leave Without

Pay (LWOP) status for the period of August 11, 2025, through October 17, 2025." *Id.* Plaintiff contends that Lt. Col. McCormick failed to sufficiently consider his request. *Id.* ¶¶ 14–16.

Plaintiff asserts that he suffered lost wages due to the denial: "As a result of the LWOP designation, Plaintiff did not receive wages for the period August 11, 2025 through October 17, 2025." *Id.* ¶ 17. Plaintiff further contends that the Air Force wrongly issued three suspensions against him before and after his request for leave: a seven-day suspension dated April 22, 2025; a fourteen-day suspension dated July 18, 2025; and a fourteen-day suspension dated December 4, 2025. *Id.* ¶ 18.

In his Second Amended Complaint, Plaintiff added allegations that he lost wages during the federal government shutdown that began on October 1, 2025; these allegations were not present in his original Complaint or First Amended Complaint. *See id.* ¶ 23. Plaintiff alleges that his LWOP period ended on October 17, 2025, after the shutdown began. *Id.* ¶ 24. Plaintiff's Leave and Earnings Statement allegedly "reflected 80 hours coded as furlough status" for the pay period ending November 1, 2025, the first full pay period after the LWOP period. *Id.* ¶ 25. Plaintiff alleges that the Air Force never provided him with a "recall notice" or "[a]ny written determination clarifying Plaintiff's duty status following the end of the shutdown." *Id.* ¶ 27.

On December 29, 2025, Plaintiff alleges that he emailed two supervisors from his personal email address "requesting written clarification of his duty status, resolution of [Government Employee Fair Treatment Act of 2019 (GEFTA)] back pay, restoration of IT system access, and reasonable accommodation determination." *Id.* ¶ 28. Plaintiff further alleges that "[o]n February 4, 2026, Defendant issued a Notice of Proposed Removal charging Plaintiff [as] Absent Without Leave (AWOL) for the period December 29, 2025 through February 4, 2026. This period includes the October-November 2025 shutdown period for which Plaintiff's [Leave and Earnings

Statement] showed furlough status." *Id.* ¶ 30. Plaintiff alleges that he has not received back pay for the government shutdown period, even though his Leave and Earnings Statement from the time allegedly reflected that he was on furlough status. *Id.* ¶ 31.

Plaintiff brings three claims for relief. In Count One, Plaintiff seeks back pay for time that he was subject to the LWOP, from August 11, 2025, through October 17, 2025. *Id.* ¶¶ 36, 41. In support of that request, Plaintiff argues that the Air Force wrongly denied him religious leave and improperly classified his absence as LWOP. *Id.* ¶¶ 39, 40. In Count Two, Plaintiff seeks back pay for the allegedly unwarranted suspensions issued against him. *Id.* ¶ 48. In Count Three, Plaintiff seeks back pay for the period during the government shutdown when he was allegedly classified as furloughed. *Id.* ¶ 54.

## II.     District Court Case

Plaintiff also has a nearly identical case pending before the United States District Court for the District of South Carolina. *See Connally v. Meink*, No. 2:26-cv-7 (D.S.C.) (District Court Case). Plaintiff initially filed the District Court Case in the United States District Court for the District of Columbia on September 4, 2025. District Court Case, ECF No. 7 at 1. That case was transferred to the District of South Carolina on December 11, 2025. *Id.* The named defendant is Troy E. Meink, the Secretary of the Air Force, who is sued in his official capacity. District Court Case, ECF No. 1 at 1.

Similar to the present case, in the District Court Case, Plaintiff alleges that he was subject to retaliation and other adverse employment actions after he "engaged in protected activity." District Court Case, ECF No. 1-1 at 1. Plaintiff asserts that the adverse employment actions include suspensions, the denial of "requested accommodation for observance of the Buddhist Vassa period (July–Oct 2025)," and the imposition of LWOP status. *Id.* Plaintiff contends that Lieutenant Colonel John McCormick wrongly denied his accommodations request and

4

"require[ed] LWOP." District Court Case, ECF No. 1-2 at 1. Plaintiff alleges that he was classified as furloughed on at least one Leave and Earnings Statement during the government shutdown beginning in October 2025, but that he was not paid for the furloughed time after the shutdown ended. District Court Case, ECF No. 5 at 3–4. Finally, Plaintiff alleges that the Air Force changed his status to AWOL during a pay period after Plaintiff was listed as furloughed. *Id.* at 3.

## PROCEDURAL HISTORY

On September 8, 2025, Plaintiff filed his original Complaint in this Court, which raised two counts concerning adverse employment actions by the Air Force. ECF No. 1. This Court initially denied Plaintiff's motion to proceed *in forma pauperis* due in part to an indication of extensive personal travel abroad. ECF No. 6. Subsequently, Plaintiff moved for reconsideration, supplementing his application, and, on September 29, 2025, the Court granted Plaintiff's renewed motion to proceed *in forma pauperis*. ECF Nos. 7, 8. On January 30, 2026, Defendant moved to dismiss Plaintiff's original Complaint. ECF No. 11.

On February 19, 2026, Plaintiff filed his First Amended Complaint ECF No. 12. On February 26, 2026, Defendant moved to dismiss Plaintiff's First Amended Complaint. ECF No. 14. On February 27, 2026, this Court granted Plaintiff's unopposed Motion for Leave to File a Second Amended Complaint and accordingly denied as moot Defendant's prior-filed Motions to Dismiss. Minute Order, dated Feb. 27, 2026.

On March 6, 2026, Plaintiff filed his Second Amended Complaint, which added a third count. ECF No. 17 (Second Amended Complaint). On March 13, 2026, Defendant moved to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 18 (Motion). On April 13, 2026, Plaintiff filed his Opposition to Defendant's Motion, and on April 27, 2026, Defendant filed its Reply. ECF Nos. 20 (Response), 21 (Reply).

5

## APPLICABLE LEGAL STANDARDS

### I.   Rule 12(b)(1) Motion to Dismiss

"The Court of Federal Claims is a court of limited jurisdiction." *Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014). Generally, the Tucker Act defines this Court's jurisdiction. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not create any "substantive rights" against the United States. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)). Instead, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (first citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); then citing *United States v. Testan*, 424 U.S. 392, 398 (1976)); *see* 28 U.S.C. § 1491(a)(1).

This Court "liberally" construes complaints filed by *pro se* plaintiffs. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Although held to a less stringent standard for procedural deficiencies, *pro se* plaintiffs must still prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023); *Owens v. United States*, No. 2024–1883, 2024 WL 5103361, at *2 (Fed. Cir. Dec. 13, 2024); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, *pro se* or otherwise, may be excused from the burden of meeting the court's jurisdictional requirements.").

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). While this Court allows ambiguities in *pro se* filings, it "does not excuse . . . failures" on the merits. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). Regardless of a plaintiff's *pro se* status, this Court must dismiss claims outside its limited subject matter jurisdiction. *See* Rule 12(h)(3).

## DISCUSSION

Defendant seeks to dismiss the Second Amended Complaint under the Section 1500 jurisdictional bar because "the pendency of Mr. Connally's first-filed action in district court on substantially the same facts divests this Court of jurisdiction." Mot. at 2. It is well-established that the Court of Federal Claims lacks jurisdiction over any suit in which a plaintiff has previously filed a pending suit that concerns the same operative facts:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Specifically, Defendant argues that the Court lacks jurisdiction over all three counts in Plaintiff's Second Amended Complaint due to Section 1500: "[t]he § 1500 jurisdictional bar by itself resolves this entire matter." Mot. at 2.[1] Plaintiff counters that Section 1500 does not bar this suit because the District Court Case seeks relief under different statutes, which require

---

[1] Defendant also contends that the Second Amended Complaint could be dismissed on alternate grounds. *See* Mot. at 5 (moving to dismiss Counts One and Two for lack of Tucker Act jurisdiction), 7–8 (moving to dismiss Count Three for failure to state a claim for back pay).

different elements to state a claim.  Resp. at 3 ("Topical overlap—that both suits arise from the same employment relationship—is not operative fact identity.").

In deciding whether Section 1500 applies to bar suit in this Court, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has directed the Court of Federal Claims to adhere to the following test:

> To determine whether § 1500 applies, a court must make two inquiries: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action."

*Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1381 (Fed. Cir. 2017) (quoting *Res. Invs., Inc. v. United States*, 785 F.3d 660, 664 (Fed. Cir. 2015)); *see also Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013).

## I.      Earlier-Filed Suit or Process

*First,* it is evident here that the District Court Case is an "earlier-filed 'suit or process' pending in another court.'"  *See Petro-Hunt*, 862 F.3d at 1381 (quoting *Res. Invs.*, 785 F.3d at 664).  Plaintiff filed his District Court Case on September 4, 2025.  District Court Case, ECF No. 7 at 1.  The District Court Case is an earlier-filed suit because Plaintiff filed the instant case in the Court of Federal Claims 4 days later, on September 8, 2025.  ECF No. 1.

The District Court Case is also a pending suit.  The docket reflects that the case remains pending, and Plaintiff filed his most recent brief in the District Court Case on May 21, 2026.  District Court Case, ECF No. 32.  Thus, the District Court Case is an earlier-filed suit that meets the first prong of the Federal Circuit's framework to determine whether Section 1500 bars this Court's jurisdiction.  *See Petro-Hunt*, 862 F.3d at 1381.

## II.    For or In Respect to the Same Claim

"Two suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). Defendant asserts that the District Court Case concerns "substantially the same facts as here, namely, complaints about Mr. Connally's LWOP, suspensions, and pay during the lapse in appropriations." Mot. at 5.  Plaintiff argues that the suits are not for or in respect to the same claims because the claims in each suit purportedly require different legal elements: "operative facts are those which provide the essential elements of each claim—not background context or the general employment relationship from which multiple claims arise." Resp. at 2.

Plaintiff misstates the law.  As noted, operative facts are defined by the facts of the underlying situation, "'regardless of the relief sought in each suit,' . . . or the legal theories asserted." *Petro-Hunt*, 862 F.3d 1381–82 (quoting *Tohono*, 563 U.S. at 317).  In *Griffin v. United States,* the Federal Circuit rejected a Section 1500 argument similar the one Plaintiff seeks to advance here. *Griffin v. United States*, 590 F.3d 1291, 1293 (Fed. Cir. 2009), *abrogated on other grounds*, *Tohono*, 563 U.S. 307.  There, a civilian employee of the United States Army Reserve raised discrimination claims in two lawsuits, the first of which was filed in federal district court, and the second of which was filed in the Court of Federal Claims. *Id.* at 1292.  As originally filed, the suit in federal district court included a retaliation claim that relied upon the same operative facts as a Fair Labor Standards Act claim that plaintiff filed in the Court of Federal Claims. *Id.* at 1293–94.  The plaintiff in *Griffin* argued that the claims relied upon different facts because the claims asserted required proof of different elements; the district court claim required "proof of intentional discrimination," whereas the claim brought in the Court of Federal Claims did not. *Id.* at 1293.  The Federal Circuit rejected the plaintiff's argument, holding that the operative facts were

9

the same in each suit because the facts "mirror[ed] each other" and plaintiff's "injury for both claims stem[med] from the same single event." *Id.* at 1294. The Section 1500 bar applied, and the Federal Circuit held that the Court of Federal Claims lacked jurisdiction over the later-filed claim. *Id.* at 1295.

As in *Griffin*, Plaintiff's claim here arises under substantially the same operative facts as the District Court Case because the pleadings "mirror[] each other" and the "injury for both claims stems from the same single event." *Griffin*, 590 F.3d at 1294. Indeed, Plaintiff alleges the same operative facts here and in the District Court Case concerning the alleged religious observance that led to the adverse employment actions. *Compare* Second Am. Comp. ¶ 11 ("On July 17, 2025, Plaintiff notified his supervisors of his intent to observe Vassa, a sacred period in the Buddhist faith, and sincerely held belief from July 17, 2025 through October 17, 2025."), *with,* District Court Case ECF No. 1-1 at 1 ("Plaintiff requested accommodation for observance of the Buddhist Vassa period (July–Oct 2025"). Plaintiff also alleges the same facts here and in the District Court Case about the denial of the request and the imposition of the LWOP. *Compare* Second Am. Compl. ¶ 13 "On August 11, 2025, Lt. Col. John R. McCormick issued a memorandum denying Plaintiff's requested accommodation and placing Plaintiff on Leave Without Pay"), *with,* District Court Case, ECF No. 1-2 at 1 ("Lt Col John McCormick denied request, requiring LWOP for Vassa period"). Further, Plaintiff alleges the same operative facts in each suit concerning unjustified suspensions after he engaged in protected activity. *Compare* Second Am. Compl. ¶ 44 ("For each suspension, the proposing official, deciding official, or both were subjects of Plaintiff's pending EEO and IG complaints—including complaints arising from protected disclosures"), *with,* District Court Case, ECF No. 1-1 at 1 (alleging that adverse actions, including suspension, "followed closely after protected activity and were carried out by identified [Responsible Management Officials],

10

demonstrating retaliatory motive"). Plaintiff also alleges the same operative facts in each suit concerning back pay for the time he was allegedly classified as furloughed. *Compare* Second Am. Compl. ¶ 31 ("As of the date of this filing, Plaintiff has not received payment for the 80 hours of furlough"), *with* District Court Case, ECF No. 5 at 4 ("Plaintiff's LES reflects 80 hours coded a 'Furlough,' yet Plaintiff has not received retroactive pay for those hours."). Finally, Plaintiff alleges the same operative facts in each suit concerning his classification as AWOL after the furlough period. *Compare* Second Am. Compl. ¶ 30 ("On February 4, 2026, Defendant issued a Notice of Proposed Removal charging Plaintiff with Absent Without Leave"), *with* District Court Case, ECF No. 5 at 3 ("In a subsequent pay period, Plaintiff's LES reflects 80 hours coded as 'AWOL,' rather than furlough."). In each suit, Plaintiff lodges claims based on facts that mirror each other and arise from the same alleged injuries: the denial of the religious observance request, the imposition of LWOP status, the allegedly unjustified suspensions, the failure to provide back pay for furlough status, and the AWOL classification.

As Plaintiff brings claims that mirror each other and are based on the same injuries in each case, the operative facts are the same, even if Plaintiff cites different legal remedies. *See Petro-Hunt*, 862 F.3d 1381–82. As the District Court Case was filed before the suit in this Court and the operative facts are the same, Section 1500 bars this Court's jurisdiction as a matter of law. *See id.* at 1381; *Res. Invs.*, 785 F.3d at 664; 28 U.S.C. § 1500.

Plaintiff cannot save his case with his argument that Count Three—his claim for backpay due to his alleged furlough status during the government shutdown period—is not subject to the Section 1500 bar. Resp. at 3. Plaintiff argues that Count Three is exempt from the Section 1500 bar because no similar "claim of any kind was pending in any court on September 8, 2025, the date the [Court of Federal Claims] complaint was filed." *Id.* Plaintiff cites *Agility Public Warehousing*,

a non-binding Court of Federal Claims case, for the proposition that "a court-ordered Rule 15(d) supplemental pleading, when granted, cures § 1500 concerns by establishing jurisdiction through the relation-back mechanism." Resp. at 3–4 (citing *Agility Public Warehousing Co. v. United States*, 143 Fed. Cl. 157 (2019)). However, *Agility Public Warehousing* is not directly applicable and cannot rescue Plaintiff's claims here. *See Agility Public Warehousing*, 143 Fed. Cl. at 167. There, Section 1500 did not bar any claims because the claims were first filed in the Court of Federal Claims, not district court. *Id.* ("Section 1500 does not pose as a barrier to jurisdiction for the original complaint in [the Court of Federal Claims case] because that case predated Agility's D.C. District Court case."). Contrary to Plaintiff's arguments here, the plaintiff in *Agility Public Warehousing* could amend its complaint to include claims that mirrored claims previously filed in district court only because the original complaint in the Court of Federal Claims predated the district court case. *See id.* Therefore, the Court of Federal Claims had jurisdiction from the inception of the case. *See id.* The order of operations seen in *Agility Public Warehousing* included first a complaint in the Court of Federal Claims, which Section 1500 did not bar, then a separate suit in district court, then an amendment of the suit in the Court of Federal Claims with the same operative facts as those in the district court suit. *See id.*

Plaintiff seeks to reverse the proper order here; he cannot salvage jurisdiction via amendment when the Court lacked jurisdiction at the time the Complaint was filed. *See id.* Instead, as Federal Circuit precedent dictates, the rule is that "jurisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012). Indeed, Plaintiff does not argue that any operative facts in his original Complaint afford this Court with jurisdiction; instead, he asserts that new facts

12

appearing in his Second Amended Complaint support jurisdiction in this Court. *See* Resp. at 2–3. However, as noted above, the Federal Circuit has rejected Plaintiff's approach. *Res. Invs.*, 785 F.3d at 669 ("The amended [Court of Federal Claims] complaint is irrelevant because of 'the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993))); *Cent. Pines*, 697 F.3d at 1367. As this Court lacked jurisdiction over the Complaint when it was filed, the addition of Count Three in the Second Amended Complaint cannot serve to sidestep the Section 1500 bar. *See Cent. Pines*, 697 F.3d at 1367.[2]

## CONCLUSION

Accordingly, as this Court lacks jurisdiction over Plaintiff's claims, the Court **GRANTS** Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 18) pursuant to Rule 12(b)(1). Plaintiff's Second Amended Complaint is **DISMISSED** pursuant to Rules 12(b)(1) and 12(h)(3). The Clerk of Court is **DIRECTED** to enter Judgment accordingly and mark this case as closed.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

June 11, 2026
Washington, D.C.

---

[2] Additionally, Plaintiff had already raised his furlough-related backpay claim in the District Court Case before his amendment in the instant case. Indeed, Plaintiff raised the backpay claim in the District Court Case on November 25, 2025. District Court Case, ECF No. 5 at 8. Plaintiff then raised the backpay claim, which was based on the same operative facts, in this Court on March 6, 2026, more than three months later. Second Am. Compl.

13